**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MAI NGOC BUI, | No. 15-55116 |
| Plaintiff-Appellant, | |
| v. | D.C. No. 8:14-cv-00757-DOC-RNB |
| TON PHI NGUYEN; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted October 2, 2017
Pasadena, California

Before: RAWLINSON and N.R. SMITH, Circuit Judges, and KORMAN,[**]
District Judge.

Mai Ngoc Bui appeals the district court's grant of Defendants' motion to

dismiss with prejudice the Racketeer Influenced and Corrupt Organizations

(RICO) claim from her Second Amended Complaint (SAC). We have jurisdiction

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

under 28 U.S.C. § 1291. We reverse and remand with instructions to allow Bui another opportunity to amend her complaint.

Civil RICO is a valid means of recovery for a plaintiff where she meets the statutory requirements. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493-98 (1985). The RICO statute outlaws "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)). "Racketeering activity," as applicable to this case, is defined as "any act which is indictable under . . . section 1341 (relating to mail fraud) [or] section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1)(B). An "enterprise" is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). And, a "pattern of racketeering activity" "requires at least two acts of racketeering activity," occurring within ten years of each other. *Id.* § 1961(5). Thus, as a predicate to sustaining a civil RICO claim, a plaintiff must demonstrate the defendant functioned as an "enterprise," engaged in racketeering activity—in this case mail or wire fraud—and did so in a "pattern." The district court found that Bui's SAC failed to sufficiently allege each element.

1. An "enterprise" is any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). To find an "enterprise," there must be (1) "evidence of an ongoing organization, formal or informal," and (2) "evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). It must have "a structure," which means it has "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 945-47 (2009). We have summarized the Supreme Court's jurisprudence as requiring: "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E.*, 751 F.3d at 997 (citing *Boyle*, 556 U.S. at 946).

Bui's SAC sufficiently pleads the existence of such an enterprise. First, Bui alleges that Defendants had a "scheme to plunder millions of dollars from Mrs. Bui," and that Defendants "accomplished this plunder of Mrs. Bui's money by means of deliberate, calculated and malicious legal acts, including actual fraud, wire fraud and forgery." As evidenced by the SAC's allegations, this scheme required a common purpose to carry out. Second, the SAC pleads a sufficient "structure or organization," because, although the SAC alleges that Hung Tran

3

(Hung) and Lan Bich Nguyen (Lan) functioned as the primary actors, the corporate entities controlled by others, and the property transactions facilitation by them, formed a cohesive part of the group Bui alleges defrauded her. Finally, the SAC sufficiently alleges longevity necessary to accomplish the enterprise's purpose, as it alleged that the Nguyen family operated other fraudulent schemes in the past, which interacted with the instant allegation. As such, the district court erred by concluding that Bui had failed to sufficiently plead the existence of an "enterprise."

2. A RICO claim must adequately plead at least "two acts of racketeering activity," which, in this case, are wire and mail fraud. 18 U.S.C. § 1961(5). "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E.*, 751 F.3d at 997. "A wire communication is in furtherance of a fraudulent scheme if it is incident to the execution of the scheme, meaning that it need not be an essential element of the scheme, just a step in the plot." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (internal quotation marks, ellipses, and citations omitted). All allegations of fraud must be pleaded with "particularity." Fed. R. Civ. P. 9(b); *accord Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987).

4

Bui alleges four wire transfers and one mailing as the necessary predicate acts of wire and mail fraud, but the district court concluded that, at most, only one of the alleged transfers was wire fraud. We disagree. Three of the alleged transfers sufficiently plead instances of wire fraud. First, Bui alleges that all the transfers were part of the same, overarching scheme to "plunder millions of dollars from [her]," through initially innocuous property transactions to gain Bui's trust, and later unfettered access to her finances. This allegation is sufficient to meet the requirement that she allege a "scheme to defraud." Second, each of the alleged transfers was at least "incidental" to the overarching scheme that Bui alleges. Each was either (1) used to build Bui's trust in Defendants; (2) set up the means to commit the fraud; or (3) outright commit fraud and wrongfully take money from Bui. Therefore, each wire/mail was, at minimum, incidental to the overall scheme. Finally, the three actual wire transfers (November 1, 2012, November 6, 2012, and December 3, 2012) demonstrate a "specific intent" to defraud Bui. The ultimate scheme was to defraud Bui by convincing her to trust Defendants and then exploit that trust to defraud her. The November 1, 2012 wire transfer was done "at Defendant Lan's direction" and used to purchase the first innocent transaction, the "set[] up." The November 6, 2012 wire transfer was done to purchase property, where ultimately $200,000 "vanished and is unaccounted for" through the

5

construction process. Finally, Hung initiated the December 3, 2012 wire transfer—without Bui's knowledge or permission—to purchase the West Hollywood Property and title it in Tri Tran's (Tri) name using a "forged 'gift' letter to the escrow, indicating that Ms. Bui was gifting" the wire transfer to Tri. These transfers were "reasonably calculated to deceive persons of ordinary prudence and comprehension," *Eclectic Props. E.*, 751 F.3d at 997, and ultimately used to defraud Bui in various ways.

However, both the November 1, 2012 "intrabank" transfer (which Bui alleges is a wire transfer) and the undated mail fraud allegation, are not alleged with sufficient specificity to meet the pleading requirements. First, the "intrabank" transfer lacks any allegation that it was, in fact, a wire transfer beyond some accounting adjustment by Wells Fargo. Second, the mail fraud allegation fails to meet the Rule 9(b) pleading requirements because it is unclear from the SAC whether the mailed documents were actually part of the fraud, or if the associated wire was actually the fraudulent transaction.

Accordingly, the SAC sufficiently pleaded three instances of wire fraud.

3. The district court noted that Bui had failed to plead a "pattern" since it had found the SAC only pleaded one instance of wire fraud. This analysis was insufficient to adequately determine whether Bui pleaded a pattern.[1]

4. Although the district court has "particularly broad" discretion regarding leave to amend where the plaintiff has been given an opportunity to amend, the court must still consider "whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). Any denials are "strictly reviewed in light of the strong policy permitting amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (internal quotation marks omitted). The district court abused its discretion by not allowing Bui at least one more attempt to amend her complaint, because (1) contrary to the district court's analysis, Bui's SAC did, after amendments, sufficiently plead the existence of an "enterprise" and the minimum necessary predicate wire transfers; and (2) the district court made no additional findings regarding the factors noted in *Chodos*.

---

[1] Although the district court did some of the analysis of this issue in its order granting Defendants' motion to dismiss the First Amended Complaint, that order was not appealed and is not before us.

7

Further, even if the three instances of alleged wire fraud may not provide a sufficient "pattern," we cannot say that the amendment would be futile and would contradict the *Chodos* factors at this motion to dismiss stage of the action. There may be additional facts and legal theories that could be incorporated into a Third Amended Complaint which, as required by the Federal Rules, "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).

**REVERSED AND REMANDED.**



***Bui v. Nguyen*, Case No. 15-55116**
**Rawlinson, Circuit Judge, concurring:**

      I concur in that portion of the disposition remanding for the plaintiff to

attempt to amend her complaint one last time.  I express no view on the adequacy

of any of the allegations contained in the Second Amended Complaint.